Jones vs. State of Missouri.

of course, knew its own charter, knew that execution could not be issued till the end of three months, knew that Paynter's judgment was of the 14th of March, (the answer says so) and that execution had been issued upon it before the 19th of April, when the attachment was served. And yet the company, without an effort to disembarrass itself of the two claims voluntarily paid the money, before the return day of the attachment. This amounts almost to proof positive of collusion.

JONES vs. STATE OF MISSOURI.

See Roberts vs. the State, ante, p. 138.

APPEAL from the St. Louis Criminal Court.

STATEMENT OF THE CASE.

The defendant was charged with being a principal in the second degree of murder, in the first degree in being present, aiding and abetting Ward in killing Hibler. He was arraigned on the 28th of June, 1850, and plead not guilty.

Jones vs. State of Missouri.

At the instance of defendant a severance was granted 14th of August, 1850.

On the 16th August defendant was put upon his trial, when it was proven in addition to the facts proven on the trial of Ward, that defendant and Ward associated much together. Never (both) had been seen to do any lawful work. They had been in this city some two months, and were nearly always seen together. That defendant and Ward, in the presence of each other had frequently made threats against any officer who would attempt to arrest them; that no one officer or no two officers should arrest them; that they would kill any officer who should attempt to arrest them; said they had the weapons to do it with, and showed them to other persons. That after defendant and Ward had retreated from the officers into the back room of the coffee house, defendant tried to rescue or hinder the arrest of Ward by the use of false keys or some burglarious instrument opened the back door of the back room when the arrest was made; that defendant went out at said door and returned; asked Ward what had become of his other, (meaning, doubtless, his other pistol); that Ward replied that he did not have it; that Jones then stepped up to Ward and put his hand in Ward's pocket and then retreated a few steps from Ward and told Ward to feel in his pocket; that he went up to Ward just before the shooting; that Jones did not leave the house until after the shot was fired; that after the shot was fired Jones ran across the street and through another coffee house and asked the bar keeper to lend him a pistol to defend himself with, that he had given his last one to Ward; that at the time he opened the back door he had a large bunch of keys; that the door that they came in at was locked, and that said Jones unlocked the same. After the offence the defendant left the city immediately, and was arrested in Louisville, Ky. It was also proved that the said principal, Ward, had been convicted of murder in the first degree, as charged in said indictment.

The defendant then asked the court to give the jury the following instructions, which were refused, and the defendant excepted.

1. It is the right of every individual to be secure in his person from unreasonable seizure and arrest; but constables may arrest without warrant if a felony has been committed, and there is good cause to suspect the accused has committed the felony, or if the person arrested is committing a breach of the peace.

2. Vagrancy is no felony, nor is it a breach of the peace; and the statute of the State does not provide for the arresting of a vagrant except on the issuing of a warrant by some justice of the peace.

3. At common law no peace officer is justified in taking up night walkers unless they have been guilty of committing some disorderly conduct or suspected of felony. 2 Bk. 4 pt. 292; Bac. ab. D. 3, p. 664; 2 Ld. Ray. 1301; 3 Inst. 14.

4. To entitle the ordinances of the city of St. Louis to be received in evidence there should be attached to them a certificate of the register of the said city that they are ordinances, and the corporate seal of said city should be thereto affixed, and the jury cannot be informed that such certificate and seal is attached unless it is read to or by them, or proved by a competent witness.

5. The word "police" has three significations:

First, The first relates to the measures which are adopted to keep order, the laws on cleanliness, health, markets, to restrain any riot, rout, noise or disturbance, and disorderly assemblage.

Second, To procure to the authorities the means of detecting any attempt to commit crime.

Third, Comprehends the laws, ordinances, and other measures which require the citizens to exercise their rights in a particular form; but the powers to make ordinances on the subject of vagrancy does not arise under the definition where authority is by the charter given to a city council simply to regulate the police of the city.

6. A principal in the second degree must be present, aiding and abetting at the fact or ready assistance if necessary, and an abettor must be in a situation where he can actually give aid

Jones vs. State of Missouri.

and there should have been a common design to effect or prosecute some unlawful design and the parties should have come together and combined for the purpose of effecting that design.

7. If a police officer acting beyond the scope of his authority, attempt to make an arrest, and is resisted by the person he seeks to arrest, and an affray ensues, the officer is killed, it will be manslaughter, and not murder in the first degree.

8. A police officer making an arrest or attempting to make an arrest without a warrant in a case where a warrant is necessary and required by law, acts beyond the scope of his authority and illegally, and is a trespasser, and a citizen upon whom such an attempt to arrest or such arrest is made, is justifiable in resisting such arrest, or such attempted arrest.

9. A police officer acting by command of his superior officer is not authorized to make or justified in making an unlawful arrest by reason of the command of such superior officer.

10. If the principal police officer is not authorized by law to make on arrest without a warrant, he cannot by word of mouth give a subordinate authority to arrest without a warrant.

11. The chief of police is not such an officer as can under the law legally command a subordinate to make an arrest without a warrant in a case where a warrant is by law required.

12. An agreement made by Roberts with Marshal Felps or any other person or persons to leave the city within a given time, was not binding upon him, and his non-compliance therewith does not furnish a legal cause for excuse.

13. The presence of Jones, the defendant, in the coffee house at the time the officers went in to arrest Ward alias Roberts, is no proof that he, the defendant, was there for any unlawful purpose.

14. If the jury believe that Jones went out of the house ten or twelve minutes before the firing of the pistol by which Hibler was killed, and was not in a situation purposely to aid and abet Ward alias Roberts, at the time of such killing, in the doing of some unlawful act, the jury should find the defendant not guilty.

15. Unless the jury believe from the evidence that there was a concerted plan and a common purpose and agreement actually entered into by Ward alias Roberts and Jones, to prosecute some unlawful design, and to resist all opposers thereto, or mutually to resist every attempt of the police officers to make a legal arrest of them, they should acquit the defendant or find him guilty of manslaughter in the second degree.

The court gave the following instructions :

16. If the jury believe from the evidence in the cause that the defendant did aid and abet John Roberts in a wilful, deliberate and premeditated murder of Ephraim Hibler, as charged in the indictment, you will find him guilty as principal in the second degree of murder in the first degree.

17. It is not necessary to prove the deliberation and premeditation for any particular length of time before the homicide took place, and if the jury believe from the evidence that John Roberts took the life of the deceased, and that before the killing the said Roberts did maliciously design to commit the homicide upon the deceased, or any other person who attempted to arrest him, and also that at the time said Roberts killed the deceased he intended to do the deed, and that said killing is not excusable or justifiable homicide, nor done in the heat of passion, and that the defendant did participate in the felonious intent, and did aid and assist said Roberts in doing the killing, you will find the defendant guilty as principal in the second degree of manslaughter in the first degree.

18. It is not necessary that the defendant should be actually present at the time of the homicide. If you believe from the evidence that he had been at the house on Almond street just before the act of killing took place, and did anything in furtherance of such killing, and then left the house to avoid suspicion, this is an aiding within the meaning of the law.

19. In passing upon the malicious intent, it is lawful for the jury to consider the weapons used at the time of the homicide and the manner of using them.

20. If you entertain a reasonable doubt of the guilt of the defendant, you ought to acquit.

21. If the jury believe from the evidence that the city marshal, in pursuance of an ordin-

Jones vs. State of Missouri.

ance of the city, ordered the deceased, watchman Hibler and Hohn to arrest said Roberts and Jones as vagrants or night walkers, it was lawful for said Hibler and Hohn to make such arrest, and it is no excuse or justification for the homicide that the said watchman had not a written warrant for the purposes of the arrest.

22. If the jury believe that the witnesses Haller and Royce and Race, or any other witness, has wilfully and knowingly testified falsely to any material fact in the case, they are at liberty to reject the whole or any part of the testimony of such witness or witnesses, inconsistent with other truthful evidence in the cause.

To which defendant excepted.

The jury found the defendant guilty as principare in the 2d degree of murder in the 1st degree, and the defendant moved for a new trial upon the following grounds:

1. Because the verdict was against law. 2. Because the verdict was against the evidence in the cause, and against the weight of evidence. 3. Because the verdict was against the law and evidence. 4. Because one of the jurors misconducted himself by going to sleep while the cause was being argued by the counsel for the defendant. 5 Because the court erred in giving to the jury, of its own motion, instructions against the law of the case. 6. Because the court erred in refusing. to give to the jury the instructions asked by defendant. 7. Because the court erred in erasing a portion of, and obliterating one of the instructions asked by defendant, and then, after such erasure and alteration, giving it to the jury. 8. Because the jury were misled by the instructions given by the court of its own motion. Which motion was overruled and defendant excepted, and prayed an appeal and stay of execution; which are granted, and he brings the cause here by appeal.

LACKLAND, for the State.

I. Upon the question of premeditation and deliberation, and the inference of malice from the use of a deadly weapon, and the manner of using, and the legality of the arrest, and its effect in this case, raised by the giving and refusing of instructions by the criminal court this court is respectfully referred to the points, authorities and arguments contained in the briefs filed for the State in the case of State vs. Ward, alias Roberts.

II. The court did not err in the instructions given to the jury upon the subject of principal in the 2d degree. If the defendent, Jones, was actually or constructively present when any portion of the res gesta of the offence was perpetrated, and did anything while so present in furtherance of the common design, he was in law a principare in the 2d degree. Wharton's Crim. L. 28; 1 Hale 439; Fost. 340.

III. The court did not err in refusing the instructions asked for by the defendant in regard to the authentication of the city ordinances. The ordinances were read without objection. The bill of exceptions shows that no objection whatever was taken to the reading of the ordinances. And after the case is closed upon both sides, and argument of counsel concluded, the defendant asks the court the ordinances. This court has decided that the party must not only object to evidence and except to the ruling of the court, but that the grounds of the objection shall be stated; and that all of these facts must be shown by the bill of exceptions. State Bank v. Merchants' B. of Baltimore, 10 Mo. 128, and cases there cited.

NAPTON, J, delivered the opinion of the court.

Jones was indicted for being present, aiding and abetting one Roberts, in the murder of Hibler, a watchman of the city, and was tried and convicted.

The testimony in the case is the same as in the case of Roberts vs. The State, and the instructions similar. The judgment will be reversed and the cause remanded.